UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

ATHAR SYED HUSSAIN,

              Petitioner,

v.

U.S. CITIZENSHIP AND IMMIGRATION
SERVICES, DISTRICT DIRECTOR,

              Respondent.

Case No. 07-MC-0059 (PJS/JJG)


ORDER GRANTING PETITION TO
AMEND CERTIFICATE OF
NATURALIZATION

---

Genevieve M. Zimmerman and Stacie E. Oberts, ROBINS KAPLAN MILLER &
CIRESI, L.L.P., for petitioner.

Friedrich A.P. Siekert, Assistant United States Attorney, UNITED STATES
ATTORNEY'S OFFICE, for respondent.

This matter is before the Court on Athar Syed Hussain's petition for an order requiring

the United States Citizenship and Immigration Service ("USCIS") to issue to him an amended

certificate of naturalization.  Hussain's certificate of naturalization now bears the birth date of

June 10, 1949; Hussain seeks an amended certificate bearing the birth date of June 10, 1941.

The Court held an evidentiary hearing and heard argument on Hussain's petition on March 14,

2008.  For the reasons that follow, Hussain's petition is granted.

## I.  BACKGROUND

Hussain, the third of four brothers, was born at home in Hyderabad, India.  Hussain did

not attend school outside the home until about the fourth or fifth grade.  At some point —

Hussain surmises that it was when an older brother first brought him to school, but he does not

really know — his school was apparently informed that he was born on June 10, 1949, and that

date was recorded in his school records as his date of birth.  Hussain did not know that this birth

date appeared in his school records until many years later.

In 1959, Hussain entered the merchant navy, and he served as a sailor until 1964.  The

minimum age for acceptance into the merchant navy was seventeen, so when Hussain applied he

told the merchant navy that he was seventeen, even though he did not know his actual age.  At

the evidentiary hearing, Hussain submitted nine photographs taken of him during his time in the

merchant navy.  Most of these photographs were taken on board his ship, and most of them were

taken in 1962.  One of the photographs is a shot of Hussain posing on the observation deck of the

Empire State Building in 1961.  All of the photographs show Hussain to be a young man in his

late teens or early twenties.

After leaving the merchant navy, Hussain returned to school, completing his secondary

education in 1968.  Pet. Ex. 2.  Hussain also married in 1967.  Administrative Record 79.

Hussain then attended college, first at Anwarul Uloom Evening College and then later at

Osmania University.  Pet. Exs. 3-4.  Hussain graduated from Osmania with a Bachelor of

Commerce degree in 1973.  Pet. Ex. 5.

Hussain's school records and marriage certificate consistently state that he was born in

1949.  At the hearing, Hussain testified that he was never asked to identify his date of birth until

he enrolled in school after completing his service in the merchant navy.  At that time, he

obtained his primary school records and saw that they reported his birth date as June 10, 1949.

From that point forward, Hussain says, on the few occasions on which he was called upon to

give his date of birth, he used June 10, 1949.

In 1981, Hussain initiated proceedings to immigrate to the United States.  The

immigration process required Hussain to provide proof of his place and date of birth.  Hussain

requested a birth certificate from Hyderabad, but the Hyderabad registrar could not locate a birth

certificate for Hussain for the year 1949, and thus issued a certificate stating that no birth certificate had been found.  Pet. Ex. 6.  Hussain then turned to his father, who had been estranged from Hussain and the rest of his family for most of Hussain's life.  By this time, Hussain's father was quite elderly and had poor eyesight.  Hussain drafted an affidavit, which his father signed, attesting that Hussain was born on June 10, 1949.  Pet. Ex. 7.  Hussain became a permanent resident of the United States in 1987, and he was naturalized in the District of Minnesota in 1995.  Pet. Ex. 8.  Like his school records and other official documents, Hussain's certificate of naturalization states that he was born on June 10, 1949.

In 1998, some six years after their father's death in 1992, Hussain's brothers obtained various documents that had been in their father's possession.  Among these was an unofficial document in the handwriting of Hussain's father listing the birth dates of Hussain and his brothers.  One of Hussain's brothers contacted Hussain to inform him that, according to this document, Hussain's true date of birth was June 10, 1941.

After learning this information, Hussain acted diligently to obtain a corrected birth certificate.  He promptly asked his brother to apply for a new birth certificate from Hyderabad on his behalf.  His brother then submitted various documents to an attorney in India, including an affidavit from one of Hussain's aunts.  Eventually, in 2002, Hyderabad issued Hussain a birth certificate bearing a date of birth of June 10, 1941.  Pet. Ex. 9.  Unfortunately, however, the Indian attorney apparently destroyed the underlying documents, including the original document from Hussain's father and the affidavit from Hussain's aunt.  As a result, although Hussain possesses the birth certificate from Hyderabad, he does not possess any of the documents that were the basis for the issuance of that birth certificate.

Armed with this new birth certificate, in 2003 Hussain applied to USCIS for an amended certificate of naturalization bearing the June 10, 1941 birth date.[1]  Pet. Ex. 10.  USCIS denied Hussain's application in 2004.  Pet. Ex. 11.  Hussain appealed that denial, and USCIS denied his appeal in April 2005.  Pet. Ex. 13.  Hussain then filed a request under the Freedom of Information Act ("FOIA"), seeking from USCIS copies of all of the documents he had submitted as part of his original immigration application.  USCIS complied with Hussain's FOIA request in August 2007, and Hussain filed this action two months later.

## II.  ANALYSIS

### A.  *Discerning the Proper Legal Standards*

Hussain brings his petition under 8 C.F.R. § 334.16(b), which states:

> (b) After final action on petition. Whenever an application is made to the court to amend a petition for naturalization after final action thereon has been taken by the court, a copy of the application shall be served upon the district director having administrative jurisdiction over the territory in which the court is located, in the manner and within the time provided by the rules of court in which application is made.  No objection shall be made to the amendment of a petition for naturalization after the petitioner for naturalization has been admitted to citizenship if the motion or application is to correct a clerical error arising from oversight or omission.  A representative of the Service may appear at the hearing upon such application and be heard in favor of or in opposition thereto. When the court orders the petition amended, the clerk of court shall transmit a copy of the order to the district director for inclusion in the Service file.

---

[1]As of March 2003, the Immigration and Naturalization Service was abolished and its functions were split among two agencies:  Immigration and Customs Enforcement and USCIS.  *See Bah v. Cangemi*, 489 F. Supp. 2d 905, 909 n.4 (D. Minn. 2007).  Thus, although the form application that Hussain used to apply for a new certificate of naturalization bears the heading "Immigration and Naturalization Service," Hussain in fact submitted his application to USCIS.

This regulation specifies certain procedural requirements, but it provides virtually no substantive guidance to a court that is asked to order USCIS to issue an amended certificate of naturalization.  Indeed, the regulation does not even directly address *certificates* of naturalization, but instead discusses the process for amending *petitions* for naturalization, including those petitions that have already been granted.  Because amending an already-granted petition for naturalization seems like an oddly indirect way to go about obtaining an amended certificate of naturalization, the Court asked the parties if they had been able to identify any reason for this procedure.  Both parties admitted that they had not.  Fortunately for the Court, however, the parties generally agree on the legal framework that governs this case.

First, the parties agree that Hussain is not seeking a review of USCIS's decision to deny his application for an amended certificate.  As Hussain concedes in his petition, USCIS's power to issue an amended certificate is governed by 8 C.F.R. § 338.5, which essentially gives USCIS authority only to correct clerical errors.  Section 338.5 specifically provides that USCIS does not have authority to correct a certificate of naturalization when the reason for the correction is that the applicant was originally misinformed about his correct date of birth:

> The correction will not be deemed to be justified where the naturalized person later alleges that the name or date of birth which the applicant stated to be his or her correct name or date of birth at the time of naturalization was not in fact his or her name or date of birth at the time of the naturalization.

8 C.F.R. § 338.5(e).  Thus, both parties agree that USCIS lacks the power to make the change that Hussain seeks — and that, as a result, the Court owes no deference to USCIS's decision to deny Hussain's application for an amended certificate.

Second, as noted, the regulation under which Hussain seeks relief — 8 C.F.R.
§ 334.16(b) — on its face gives courts the power to amend petitions for naturalization, but not
the power to amend certificates of naturalization.  The government concedes, however, that
§ 334.16(b) implicitly gives the Court the power to order USCIS to issue Hussain an amended
certificate of naturalization.

Finally, the parties agree that Hussain bears the burden of showing that he is entitled to
an amended certificate.  At this point, however, the parties' positions begin to diverge.  Like the
cases they cite, the parties do not agree on what standard of proof Hussain must meet.  Most
cases suggest that a petitioner must offer "unequivocal evidence" of his true date of birth to
obtain an amended certificate.  *See, e,g.*, *Duc Minh Ha v. U.S. Citizenship & Immigration Servs.,
Dist. Dir.*, No. 05-59, 2006 WL 1997360, at *1 (D. Minn. July 14, 2006); *Liu v. INS, Dist. Dir.*,
No. 98-139, 1998 WL 809037, at *2 (N.D.N.Y. Nov. 17, 1998).  Some cases, however, apply a
less stringent "good cause" standard for issuing an amended certificate.  *See Kouanchao v. U.S.
Citizenship & Immigration Servs.*, 358 F. Supp. 2d 837, 840 (D. Minn. 2005); *In re Yu Hong
Ting*, 446 F. Supp. 203, 204 (S.D.N.Y. 1978); *In re Konsh*, 188 F. Supp. 136, 138 (E.D.N.Y.
1960).  At least one case suggests that "clear and convincing" evidence is necessary (albeit with
respect to a name change rather than a birth-date change).  *In re Garcia*, 65 F. Supp. 143, 147
(W.D. Pa. 1946).

The discussion of the standard of proof in these cases is quite abstract; courts have never
been very specific about what type of proof would meet the various standards.  But when one
looks past the discussion of the standard of proof and focuses on the facts of each case, a general
pattern emerges.  Where courts have denied petitions to amend, the evidence supporting the

petition was quite weak — sometimes bordering on unbelievable — and there was often some indication of fraud or bad faith on the petitioner's part. *See Zhang v. U.S. Dep't of Homeland Sec.*, No. 06-122, 2007 WL 2156648, at \*4-5 (N.D.N.Y July 25, 2007) (denying petition where petitioner paid a fine to procure a new Chinese birth certificate according to which the petitioner's mother would have been fifty-seven years old at the time of petitioner's birth); *In re Osman*, No. 07-24S, 2007 WL 1480966, at \*2 (W.D.N.Y. May 20, 2007) (denying petition without prejudice where petitioner did not explain why the date on his certificate was wrong and offered no evidence of his alleged true date of birth); *In re Hua*, No. 07-4S, 2007 WL 1087563, at \*2 (W.D.N.Y. Apr. 9, 2007) (denying petition without prejudice where the only evidence of petitioner's alleged true date of birth was an untranslated, unauthenticated Vietnamese birth record); *Duc Minh Ha*, 2006 WL 1997360, at \*2 (denying petition in light of substantial evidence that the birth date on the certificate was correct, including the petitioner's own allegation that he was twenty years old at the time he immigrated to the United States, which was consistent with the birth date on his certificate); *In re Ohanian*, No. 93-218, 1995 WL 62733, at \*1 (E.D.N.Y. Feb. 7, 1995) (denying petition where petitioner's testimony was not credible because, among other things, she began giving her "incorrect" age while testifying and then had to stop and "correct" herself); *In re Yu Hong Ting*, 446 F. Supp. at 204-05 (denying petition where record revealed at least four possible birth dates and petitioner's own previous testimony was consistent with the date on his certificate); *In re Chan*, 426 F. Supp. 680, 682 (S.D.N.Y. 1976) (denying petition where petitioner's only evidence was that his sister had told him that he was born in the Year of the Sheep); *In re Konsh*, 188 F. Supp. at 137-38 (denying petition where

petitioner did not explain his use of an "incorrect" birth date during the immigration process nor why he waited over twenty years before attempting to correct his certificate).

Conversely, in cases in which courts have granted petitions to amend, there was strong evidence that the birth date on the certificate was incorrect, and there was no indication that the petitioner had acted fraudulently or in bad faith.  *See Nguyen v. U.S. Dep't of Homeland Sec.*, No. 06-118, 2007 WL 2156649, at *4 (N.D.N.Y. July 25, 2007) (granting petition on the basis of the petitioner's credible testimony and his certified, authentic birth certificate); *In re Lee*, No. 06-80150, 2007 WL 926501, at *3 (N.D. Cal. Mar. 26, 2007) (granting petition where there was no indication of fraud, the mistake was the result of a mistranslation from a lunar calendar, and the petitioner presented multiple official documents with the correct date); *Kouanchao*, 358 F. Supp. 2d at 838 (granting petition where petitioner offered a coherent explanation for the incorrect date and provided a birth certificate signed by three witnesses as well as two affidavits of witnesses to his birth); *Varghai v. INS, Dist. Dir.*, 932 F. Supp. 1245, 1247 (D. Or. 1996) (granting petition where incorrect date was the result of a mistranslation from Iranian to Gregorian calendar and there was no indication of fraud).

The cases in which petitions have been granted are also important because they make clear that courts have not confined themselves to correcting inadvertent mistakes.  True, incorrect dates have most often been the result of a mistranslation or other innocent error.  But in several recent cases, courts have granted petitions to amend even when the petitioner admitted that he knew that the date of birth that he supplied to United States immigration officials was not correct.  *See Nguyen*, 2007 WL 2156649, at *4 (petitioner understated his age while in a refugee camp because he thought he had to be under eighteen to attend high school in the United States);

*Kouanchao*, 358 F. Supp. 2d at 838 (petitioner understated his age during his youth in Laos in order to register for high school).  Because the petitioners in these cases did not misrepresent their ages to gain any immigration benefits, the courts found that the petitioners' culpability was no bar to relief.  *Cf. In re Shrewsbury*, 77 F.3d 490, No. 94-16736, 1996 WL 64988, at *1 (9th Cir. Feb. 12, 1996) (affirming denial of petition where petitioner overstated her age in order to marry and thereby immigrate as the wife of a United States citizen).

In sum, each of the relevant cases involves unique facts — facts reflecting the unique paths to citizenship taken by the various petitioners.  As a result, distilling a set of abstract legal principles from these decisions is difficult.  In general, though, it appears that courts have granted petitions to amend when: (1) there is clear and convincing evidence that the birth date on the certificate of naturalization is wrong;[2] (2) there is little or no evidence that the petitioner acted fraudulently or in bad faith either when he or she initially provided the incorrect birth date to immigration authorities or when he or she later sought to amend the certificate of naturalization; and (3) there is reliable evidence supporting the birth date that the petitioner now

---

[2]Few courts have actually used the phrase "clear and convincing evidence," but that, in reality, is the standard of proof that most courts seem to have applied.  In almost every case in which a petition has been granted — whether the court purported to apply the unequivocal-evidence standard (which seems to be just another name for the clear-and-convincing-evidence standard), the good-cause standard, or something else — it appears that the petitioner in fact presented clear and convincing evidence that the birth date on his or her certificate was incorrect.  Put differently, it appears that, in cases in which petitions were granted, the petitioners submitted evidence not merely that it was more likely than not that the birth date on the petition was incorrect, but evidence that "could place in the ultimate factfinder an abiding conviction that . . . [it was] 'highly probable'" that the birth date on the petition was incorrect.  *See Colorado v. New Mexico*, 467 U.S. 310, 316 (1984) (citation omitted) (defining clear-and-convincing-evidence standard).

alleges is correct.  Applying these principles, the Court is satisfied that Hussain's petition should be granted.

## B.  *Applying the Proper Legal Standards*

### 1.  Inaccuracy of Birth Date on Certificate

To begin with, Hussain has presented clear and convincing evidence that he was not born in 1949.  It is undisputed that Hussain joined the merchant navy in 1959.  It is also undisputed that the merchant navy did not accept candidates who were not at least seventeen years old.  In Patrick O'Brian's novels (set during the Napoleonic Wars), young lads may serve in the Royal Navy, but it is difficult to believe that, in 1959, Hussain set sail as a member of the merchant navy at the age of nine or ten.

Even more convincing are the photographs that Hussain submitted.  These photographs were taken of Hussain during his service in the merchant navy.  The government has not challenged the authenticity of these photographs, and, on close examination, they appear to be genuine.  These photographs leave no doubt that Hussain was a young man in his late teens or early twenties — and not a child of nine or ten — when he entered the merchant navy in 1959.  Hussain has also submitted documentary evidence, in the form of a 1963 letter from the British shipping company for which he worked, to substantiate his assertion regarding the years of his service in the merchant navy.

The Court also had an opportunity to question Hussain about his memory of certain historical events.  Specifically, the Court asked Hussain if he had any memory of either the 1947 liberation of India from the British (and the armed conflict that accompanied that liberation in some parts of India) or the 1948 assassination of Mohandas Gandhi.  Hussain, whose family is

Muslim, recalled that there was looting and unrest in Hyderabad around the time that India

became independent from Britain.  He also remembered that, after Gandhi's assassination, there

was rioting during which some Hindus violently attacked Muslims, including his older brother.

Hussain described a vivid memory of the injuries that his brother suffered in that rioting.  The

Court found this testimony credible and, obviously, Hussain would not be able to remember such

events if he was born in 1949.

Finally, the Court had an opportunity to listen to and observe Hussain at close range

during the evidentiary hearing.  Hussain's personal appearance and deportment are much more

consistent with those of a man in his late sixties than those of a man in his late fifties.  Hussain

appears to be a 66-year-old man; he does not appear to be a 58-year-old man.

For all of these reasons, the Court has little doubt that the date of birth on Hussain's

certificate of naturalization — June 10, 1949 — is not correct.

## 2. Absence of Fraud

At the same time, the Court finds it difficult to believe that when Hussain commenced

immigration proceedings in 1981, he did not know that the June 10, 1949 birth date that he

provided to immigration officials was incorrect.  The Court fully appreciates that there are

enormous cultural differences between the United States of today and the India of a half century

ago.  Hussain testified that birth dates and ages simply did not hold the same significance in

India then as they do in the United States.  According to Hussain, when he was a child, Indian

families did not even acknowledge children's birthdays.  Hussain says that he did not know how

old he was when he started school, and, when in the 1960s he received school records reporting

his birth date as 1949, it never occurred to him to question the accuracy of those records.

In general, the Court found Hussain to be a credible witness, and the Court can accept that, as a child and young man, Hussain simply did not know (or care) how old he was.  At some point, though, Hussain must have realized that he could not have been born in 1949.  For example, when Hussain was married in 1967, he reported to the government that he was eighteen years old (which would have been consistent with a 1949 birth date).  Yet in 1959, Hussain told the merchant navy that he was seventeen years old.  It is hard to believe that it did not occur to Hussain that, if he was old enough to pass for seventeen in 1959 (even if he was not actually seventeen), then he could not possibly have been eighteen in 1967.

In short, the Court finds that Hussain must have known that the birth date that he provided to United States immigration officials was not correct.  Hussain must have realized at some point in the 1960s (if not sooner) that he could not have been born in 1949.  But the Court credits Hussain's testimony that his true date of birth simply did not *matter* to him.  Given that his school records identified 1949 as his date of birth, and given that age was not important in India, Hussain decided that, on the rare occasions on which he would be asked for his date of birth, he would use 1949.[3]

-----

[3]It is difficult to know why the error appears in Hussain's school records.  Hussain's guess — that, when his brother first took him to school in the fourth grade, his brother told the school that he had been born in 1949 — seems implausible.  If Hussain was born in 1941, then his brother would have taken him to school for the first time in about 1949.  Even the most inattentive bureaucrat would have realized that the fourth grader standing before him or her had not just been born.

Two other explanations seem more likely.  First, the brother could have told a school official that Hussain was born on June 10, 1941, but the official inadvertently wrote down the current year (1949) rather than the year of birth (1941).  Second, the school official could have written down the correct year (1941) but the date was later misread because of a long or slanted or otherwise misshapen serif on top of the numeral one.  (In some parts of the world, the serif on top of the numeral one is written downward and to the left, sometimes extending almost to the

The fact that Hussain knew — or at least should have known — that the birth date that he provided to United States immigration officials was incorrect does not bar Hussain from seeking to correct his certificate of naturalization.  As described above, courts have granted petitions to amend even when the petitioner admitted that he knew his true date of birth at the time of his naturalization.  What is important is not whether the petitioner had reason to believe that he gave an incorrect date to immigration officials; what is important is whether, in giving the incorrect date, the petitioner acted fraudulently or in bad faith.

Hussain did not.  Nothing in the record suggests that he had anything to gain — in India, in the United States, or anywhere else — by reporting his birth date as 1949.  Nothing in the record contradicts Hussain's explanation that he consistently gave 1949 as his date of birth — from the early 1960s onward — because that was the date that appeared in his school records, and, as far as he was concerned, 1949 was as good a birth date as any.

Nor is the Court persuaded that Hussain is acting in bad faith in seeking to correct his certificate of naturalization.  The Court is aware that changing Hussain's date of birth to 1941 on his certificate may help him obtain Social Security and Medicare benefits sooner than he otherwise would.[4]  But Hussain started the process of correcting his date of birth ten years ago, immediately after his brothers found the list of birth dates in his father's papers, and long before he would have been eligible for government benefits.  Indeed, at the time, Hussain was gainfully employed in a stable position by a large bank.  Hussain testified credibly that he was spurred to

---

baseline.)

[4]The Court does not know, and counsel did not mention, whether the Social Security Administration will be bound by the date on Hussain's amended certificate or whether it will be free to make its own determination as to Hussain's age.

-13-

seek a correction by the discovery of his "true" date of birth in his late father's papers, and that he seeks the correction primarily because he wants to conform to cultural norms in the United States, and because he wants his grandchildren and other descendants to know when he was born. The Court can understand the desire of a first-generation American to leave an accurate record of his life.

In sum, although the Court finds it likely that, when Hussain initiated immigration proceedings in 1981, he knew that the June 10, 1949 birth date that he provided to immigration officials was incorrect, the Court also finds that Hussain did not act fraudulently or in bad faith in providing that date to immigration officials then, and that Hussain is not acting fraudulently or in bad faith in seeking to correct his certificate of naturalization now.

### 3.  Accuracy of Proposed Birth Date

This case is unique in one respect. Typically when a petitioner seeks an amended certificate of naturalization, the evidence establishing that the date on the existing certificate is incorrect is identical to the evidence establishing that date proposed for the amended certificate is correct. In other words, the reason why the court is convinced that the existing date is *incorrect* is usually because the court is convinced that the proposed date is *correct*. For that reason, courts have never discussed whether the standard of proof that applies to proving that the existing date is incorrect should also apply to proving that the proposed date is correct.

In this case, clear and convincing evidence establishes that Hussain was not born on June 10, 1949. Indeed, the Court has no real doubt that the date of birth on Hussain's certificate of naturalization is incorrect and should be changed. But the evidence that Hussain *was* born on June 10, 1941 is not as strong. What, then, should the Court do in this situation?

The Court understands why a petitioner should be required to prove by clear and convincing evidence that the date of birth appearing on an existing certificate is inaccurate before USCIS is ordered to issue an amended certificate.  Certificates of naturalization are important documents — official documents on which governmental and private entities rely — and requests to alter a birth date on such important documents should not be treated lightly.  One who seeks to have an existing certificate torn up and replaced with a new certificate should thus bear a heavy burden.  But once the petitioner *meets* that burden — once the petitioner proves, by clear and convincing evidence, that the date of birth on his certificate *incorrect* — then it makes less sense to require clear and convincing evidence of the accuracy of the date of birth proposed for the amended certificate.

After all, someone applying for permanent residence in the United States or for United States citizenship does not have to provide clear and convincing evidence of his or her date of birth.  Moreover, in cases such as this — cases involving a birth that was not recorded in any official document and that took place in a private home in a country that did not confer much significance on ages or dates of birth — it may be much easier for the petitioner to prove that the birth date on his certificate is incorrect than to prove that the replacement date that he proposes is correct.  It may be that the latter is — and can never be anything but — a good-faith approximation.

In the Court's view, then, once a petitioner has proven by clear and convincing evidence that the date of birth appearing on his certificate of naturalization is incorrect, the USCIS should be ordered to issue an amended certificate with the date of birth proposed by the petitioner as long as the petitioner submits reliable evidence of the accuracy of that proposed date.  In this

case, Hussain has submitted reliable evidence (albeit not clear and convincing evidence) that he was born on June 10, 1941.

Hussain has procured an Indian birth certificate with the 1941 date.  The government has not challenged the admissibility or authenticity of this certificate under Fed. R. Civ. P. 44(a)(2), Fed. R. Evid. 902(3), 8 C.F.R. § 287.6, or any other provision of law.  Nor has the government argued that fraudulent Indian civil documents are easily procured.  *Cf. Duc Minh Ha*, 2006 WL 1997360, at *6 (noting that, according to the United States Department of Foreign Affairs, fraudulent civil documents are common in Vietnam).  Instead, the government notes the lack of documentation supporting the new birth certificate.

As explained above, however, Hussain has accounted for his inability to provide the documentation on which the new birth certificate was based.  Moreover, the accuracy of the new certificate is supported by other evidence in the record.  For example, Hussain's entry into the merchant navy in 1959, his photographs from the time he served in the merchant navy, and his memories of historical events are generally consistent with a 1941 birth date.

This is not to say that there is nothing in the record that militates against Hussain's claim of a 1941 birth date.  Hussain had trouble giving a clear and coherent timeline of the events in his life.  But Hussain was being asked to remember dates and events that took place a half century ago, at a time when he did not know his age or date of birth.  In these circumstances, some ambiguity and confusion is understandable.  Moreover, there were clearly language and cultural barriers between the Court and counsel, on the one hand, and Hussain, on the other hand.  Hussain had difficulty understanding some of the questions posed to him by the Court and by counsel — and the Court and counsel, in turn, had difficulty understanding some of Hussain's

-16-

answers.  Overall, however, the Court found Hussain to be trying to provide full and accurate answers to the questions as he understood them.

### C.  Conclusion

After careful consideration of the entire record, the Court concludes that Hussain's petition should be granted.  There is little doubt that the 1949 date on his certificate of naturalization is incorrect.  There is no hint that Hussain has ever acted fraudulently or in bad faith in identifying 1949 as his date of birth.  And there is reliable evidence supporting Hussain's claim that he was born in 1941.  The Court will therefore order USCIS to issue Hussain an amended certificate of naturalization bearing the birth date of June 10, 1941.

### ORDER

Based on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1.      Petitioner Athar Syed Hussain's petition to amend certificate of naturalization [Docket No. 1] is GRANTED.

2.      Defendant shall issue an amended Certificate of Naturalization to petitioner that identifies petitioner's date of birth as June 10, 1941.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: April  4 , 2008                                  s/Patrick J. Schiltz
                                                       Patrick J. Schiltz
                                                       United States District Judge

-17-